UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| MARY VEARRIER and<br>TRACY VEARRIER, individually<br>and as parents and next friends<br>of Paige Vearrier,<br><br>      Plaintiffs,<br><br>  vs.<br><br>STEPHEN R. KARL, M.D.;<br>ROBERT J. LUNN, M.D.;<br>PEDIATRIC SURGICAL<br>ASSOCIATES, P.C.;<br>ANESTHESIA PHYSICIANS, LTD.;<br>SIOUX VALLEY HOSPITAL and<br>SIOUX VALLEY HOSPITALS AND<br>HEALTH SYSTEM,<br><br>      Defendants. | CIV. 06-4188-KES<br><br><br><br><br><br><br><br>MEMORANDUM OPINION<br>AND ORDER |

Plaintiffs filed this action, alleging negligence in the medical treatment of their daughter, Paige Vearrier. Five of the six defendants move the court for summary judgment in their favor.

**FACTUAL BACKGROUND**

Following are the facts, viewed in the light most favorable to plaintiffs, the nonmoving parties:

On April 25, 2002, Paige Vearrier was born at Sioux Valley Hospital. Paige was born with gastroschisis, a condition where the intestines develop outside the abdomen on one side of the umbilical cord. She was immediately operated upon by defendant Dr. Stephen Karl, and she underwent a second

surgery by Dr. Karl on July 19, 2002, to relieve persistent abdominal distention.

Dr. Karl saw Paige on December 4, 2002, regarding plans for a third surgery. Dr. Karl recommended postponing surgery for three months because Paige had recently suffered from pneumonia and because of her liver cirrhosis and jaundice which had resulted from Paige's intestinal problems. In preparation for surgery, labs were completed and the results were available on February 12, 2003. No further lab work was done prior to surgery. Dr. Karl met with Paige on February 24, 2003, noting that her liver functions "have returned virtually to normal," that the jaundice had alleviated, and that Paige was "now ready for her surgery." Docket 110, page 3. On February 25, 2003, Paige underwent a third surgery with Dr. Karl to reconnect her intestines. Defendant Dr. Robert Lunn was the anesthesiologist. The surgery lasted from 10:05 a.m. to 12:45 p.m. At the start of the surgery, Paige's temperature was 38.6 degrees Celsius, and her maximum temperature during the surgery was 39.3 degrees Celsius.

Paige had been taken directly to the Pediatric Intensive Care Unit (PICU) after her two previous surgeries. After this surgery, however, Paige was taken to the Post Anesthesia Care Unit (PACU). Plaintiffs contend that both Dr. Karl and Dr. Lunn decided to move Paige to the PACU. Id. at 4. Registered Nurse Lisa Kunkle was responsible for Paige's care in the PACU. At 1:30 p.m., Kunkle documented that she notified Dr. Lunn that Paige had "cool feet and hands, bluish, increased heart rate." Id. at 5. Dr. Lunn claims that he came to

2

the PACU to see Paige and concluded that while "her capillary refill and perfusion didn't look as good as I would have liked," this was not uncommon in the PACU. Id. At 1:35 p.m., Dr. Lunn ordered 50 cc of Albumin be given to Paige. Id. at 6. At 1:59 p.m., Kunkle took Paige's vital signs; she did not take vital signs again until 2:14 p.m. Id.

At 2:30, Kunkle documented that she paged Dr. Lunn to evaluate Paige. Dr. Lunn claims that he visited Paige to evaluate her for transfer to a hospital room, but a personal visit is not reflected in her medical documents. Id. Kunkle does not remember if Lunn evaluated Paige in person. Id. at 7. A discharge evaluation can be done over the phone. Id. The documentation reflects that Lunn approved Paige's transfer from the PACU to a hospital room. At 2:45 p.m., Paige was transferred to a hospital room, where Registered Nurse Nielsen, the pediatric floor nurse, documented that Paige was "listless and pale" and "[u]nresponsive," her hands and feet were cold, and she had decreased blood pressure. Id. Dr. Lunn was paged. At 2:47 p.m., Paige had a seizure, and Kunkle paged Dr. Lunn. Id. At 2:50 p.m., Nielsen documented Paige's seizure was continuing and that Dr. Lunn and Dr. Melanie Madsen were at her side. Nielsen administered several drugs at 2:50 p.m., 3:00 p.m., and 3:05 p.m. Id. at 8. Paige was admitted to the PICU at 3:10, where she had another brief seizure at 3:15 p.m. Id. at 9 Paige was put into a medically-induced coma and remained in a coma for ten days. From February 25, 2003, to March 25, 2003, Paige remained in Sioux Valley Hospital. Id. at 10.

3

On June 10, 2008, at defendants' request, Dr. Richard T. Katz evaluated Paige, concluding that she suffered from anoxic encephalopathy, profound mental retardation/developmental delay, profound cerebral palsy without achievement of any major motor milestones, gastroschisis and subsequent complications, asthma, intractable seizure disorder, cortical blindness, hearing loss, scoliosis, and bilateral hip subluxation. Dr. Katz estimated Paige's lifespan as 21 years.

Mary and Tracy Vearrier, Paige's parents, filed this lawsuit alleging that Karl and Lunn were negligent and that their medical care failed to meet the accepted standards of care, and that Pediatric Surgical Associates (PSA) and Anesthesia Physicians (AP) are vicariously liable for the negligence of their employees. Docket 1, ¶¶ 42-49. The complaint also alleges that defendant Sioux Valley Hospital and defendant Sioux Valley Hospitals and Health Systems (SVHHS) are vicariously liable for the negligence of their employees. Id. ¶¶ 50, 51. All defendants move for summary judgment, except Sioux Valley Hospital.

**STANDARD OF REVIEW**

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Only disputes over facts that might affect the outcome of the case under the governing substantive law will properly preclude

4

summary judgment.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  Summary judgment is not appropriate if a dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  <u>Id.</u>

The moving party bears the burden of bringing forward sufficient evidence to establish that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  The nonmoving party is entitled to the benefit of all reasonable inferences to be drawn from the underlying facts in the record.  <u>Vette Co. v. Aetna Cas. & Sur. Co.</u>, 612 F.2d 1076, 1077 (8th Cir. 1980).  The nonmoving party may not, however, merely rest upon allegations or denials in its pleadings, but must set forth specific facts by affidavits or otherwise showing that a genuine issue exists.  <u>Forrest v. Kraft Foods, Inc.</u>, 285 F.3d 688, 691 (8th Cir. 2002).

## DISCUSSION

**I.    Sioux Valley Hospitals and Health Systems**

In its motion for summary judgment, SVHHS alleges that, "Plaintiffs have failed to present any evidence or make any specific claim that Defendant SVHHS or any of its employees were negligent in this case."  Docket 83, page 1.  SVHHS states that because it is "undisputed" that Nurse Lisa Kunkle works for Sioux Valley Hospital, not SVHHS, and because plaintiffs have provided no evidence regarding negligence of any SVHHS employees, it is entitled to summary judgment in this matter.  Docket 83; Docket 84; Docket 117.

5

Additionally, SVHHS submitted an affidavit from Lisa Kunkle swearing that she has been an employee of Sioux Valley Hospital since 1996. Docket 85.

The complaint names both Sioux Valley Hospital and SVHHS as defendants and alleges that both Sioux Valley Hospital and SVHHS are "vicariously liable for the negligence of its employees." Docket 1 ¶¶ 51, 52. The complaint also states generally that "Defendants failed to protect Paige Vearrier from brain damage during and after the February 25, 2003, surgery. Id. at ¶ 39. In their brief opposing the motions for summary judgment, plaintiffs confusingly abbreviate SVHHS as "Sioux Valley," Docket 110, page 15, and allege that Nurse Lisa Kunkle violated the applicable standard of care in several ways while "acting within the scope of her employment as a nurse at Sioux Valley [SVHHS], id. at 17-18. Additionally, plaintiffs argue that South Dakota law regarding vicarious liability does not require that they identify an individual employee of SVHHS as named defendant in order to allege negligence of the employer. Id. at 15-17. Finally, plaintiffs contend that, "A breach of the general health facility standard of care is alleged against Sioux Valley [SVHHS]." Id. at 17-18.

Federal Rule of Civil Procedure 56(e)(2) provides that a party opposing a motion for summary judgment "may not rely merely on allegations or denials in its own pleading; rather, its response must–by affidavits or as otherwise provided in this rule–set out specific facts showing a genuine issue for trial."[1]

---

[1] Local Rule 56.1 provides further guidance, requiring a party opposing a summary judgment motion to "respond to each numbered paragraph in the moving party's statement with a separately numbered response" and to

See also Forrest v. Kraft Foods, Inc., 285 F.3d 688, 691 (8th Cir. 2002). SVHHS has provided sworn testimony from Kunkle that she was an employee of defendant Sioux Valley Hospitals, not SVHHS, in February 2003, and plaintiffs have failed to provide anything other than mere allegations to support their assertion that Kunkle was instead employed by SVHHS. This is insufficient under Rule 56(e) to oppose SVHHS's motion for summary judgment. Wilson v. Int'l Business Machines Corp., 62 F.3d 237, 241 (8th Cir. 1995) (stating that a non-moving party "must substantiate his allegations with sufficient probative evidence that would permit a finding in his favor based on more than mere speculation, conjecture, or fantasy"); Jones v. Baisch, 40 F.3d 252, 254-55 (8th Cir. 1994) (affirming summary judgment for employer when plaintiffs "failed to proffer any contradictory evidence" that employee was acting outside of scope of employment).

Furthermore, while plaintiffs may be correct in contending that they need not include every allegedly negligent individual as a named defendant in a lawsuit based on vicarious liability, at the summary judgment stage a party must "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P.

---

"identify any material facts as to which it is contended that there exists a genuine material issue to be tried." D.S.D. CIV. LR 56.1(B). For those factual statements advanced by the moving party that the nonmoving party fails to controvert, the court will deem these statements to be admitted. Id. at 56.1(D). In their opposition to the three summary judgment motions, plaintiffs failed to respond in accordance with the local rules. Because no defendant raised an objection to plaintiffs' filings, however, the court has examined the factual allegations and supporting documents of all parties, and it has construed the facts in the light most favorable to plaintiffs, the nonmoving parties, in accordance with Rule 56.

56(e)(2); see also Davis v. Fleming Co., Inc., 55 F.3d 1369, 1371 (8th Cir. 1995) (stating that the nonmovant "must present more than a scintilla of evidence and must set forth specific facts showing that there is a genuine issue for trial"). Plaintiffs have not provided the name of any SVHHS employee who they allege was negligent, except for Kunkle. And despite their assertion that Kunkle is employed by SVHHS, plaintiffs fail to present any evidence beyond their mere assertions to counter Kunkle's affidavit that Sioux Valley Hospital, not SVHHS, was Kunkle's employer in 2003. Because plaintiffs have failed to demonstrate that there is a genuine dispute of material fact as to the negligence of any of SVHHS's employees, summary judgment is granted in favor of SVHHS.

## II.     Dr. Robert Lunn and Anesthesia Physicians, LTD.

Because this is a case brought under this court's diversity jurisdiction, it must apply the substantive law of South Dakota. PHL Variable Ins. Co. v. Fulbright McNeill, Inc., 519 F.3d 825, 828 (8th Cir. 2008). A plaintiff in a medical malpractice case has the burden of showing that the defendant acted without the care or skill ordinarily exercised in like cases by members in good standing of the same profession engaged in the same line of practice under similar circumstances. See Block v. McVay, 126 N.W.2d 808, 811-12 (S.D. 1964); see also SDPJI 105-01-A. Further, on the question of causation, "[t]he burden is on plaintiff to show that it is more probable that the harm resulted from some negligence for which defendant was responsible than in consequence of something for which he was not

8

responsible." Lohr v. Watson, 2 N.W.2d 6, 8 (S.D. 1942). In other words, "proof of causal connection must be something more than consistent with the plaintiff's theory of how the claimed injury was caused." Id.

In South Dakota, it is the general rule that expert testimony is required to establish negligence in medical malpractice cases. Magbuhat v. Kovarik, 382 N.W.2d 43, 46 (S.D. 1986). While this general rule "does not exclude the opinions and conclusions of lay witnesses on subjects which are within the common knowledge and comprehension" of ordinary jurors, id., expert testimony is normally required when laypeople "are not qualified by learning and experience to judge the medical aspects of such cases." Block v. McVay, 126 N.W.2d 808, 811 (S.D. 1964). Specifically, expert testimony is typically required on the question of causation, Lohr v. Watson, 2 N.W.2d 6, 7 (S.D. 1942), as well as on the fundamental elements of a medical malpractice case, specifically the relevant standard of care and any breach of that standard. See Koeniguer v. Eckrich, 422 N.W.2d 600, 601-02 (S.D. 1988) (citation omitted).

Just as in Block v. McVay, the Vearriers' case rests on the medical staff's "diagnostic procedures and the conclusions to be drawn therefrom." Id. at 812. Therefore, because "lay[people] cannot be expected to possess the technical knowledge and experience required to intelligently second guess a physician," the court concludes that plaintiffs must provide expert testimony upon which the jury can base a finding of negligence. Id. at 811-12. Having determined that expert testimony is required in this case, the

9

court believes that a defendant's motion for summary judgment must be granted if plaintiffs cannot provided expert testimony on the standard of care or on the question of causation.

In their motion for summary judgment, Lunn and AP argue that neither Goldie nor Martin is qualified to offer standard of care opinions regarding Lunn, an anesthesiologist. Docket 88. In the alternative, Lunn and AP contend that the expert opinions offered by plaintiffs cannot support a negligence claim.

### A. Qualification as Experts

Lunn and AP argue that because Lunn is an anesthesiologist, the relevant standard of care is that of an anesthesiologist, and Goldie and Martin are therefore unqualified to offer opinions regarding the standard of care applicable to Lunn because they are not anesthesiologists. Docket 88, page 6-9. In response, plaintiffs contend that "this is not a case about the anesthesia itself being improperly administered. Rather, it is about the preoperative and postoperative monitoring of Paige's vital signs." Docket 110, page 23.

Lunn's argument is foreclosed by Harris v. Smith, 372 F.2d 806 (8th Cir. 1967), which provides "[i]t is a well-established principle that the testimony of a qualified medical doctor cannot be excluded simply because he is not a specialist in a particular school of medical practice." Id. at 814; see also Tlamka v. Serrell, 2002 WL 500651, *2 (D. Neb. Mar. 25, 2002) (stating that while the expert's lack of expertise in cardiology "may be a

proper point of cross-examination, it does not prevent him from testifying"). This principle is especially applicable in this case, when the negligence alleged by plaintiffs does not involve the administration of the anesthesia, but the monitoring of Paige's condition during and after the surgery. See Docket 90-2, page 3 (Goldie's statements that while he is not trained in anesthesiology, he has "been involved with monitoring brain wave activity during surgeries and [has] been involved with analyzing the effects of anesthesia" and has published and given presentations about anesthesia's effects on the brain). For these reasons, the court rejects Lunn and PSA's arguments that Goldie and Martin are unqualified to provide expert testimony on behalf of plaintiffs.

**B. Dr. Goldie**

Plaintiffs assert that Lunn was the anesthesiologist during Paige's surgery and was also the doctor responsible for Paige's care while in the PACU. Docket 110, page 5. Dr. Goldie is a pediatric neurologist hired by the plaintiffs as an expert witness. The parties have cited to a deposition of Dr. Goldie on Oct. 30, 2008, as well as to an affidavit signed by Dr. Goldie, provided in part to the court. Docket 80-2 (deposition excerpt); Docket 111-2 (excerpt of affidavit); Docket 111-16 (deposition excerpt); Docket 119-2 (deposition excerpt).

In Dr. Goldie's affidavit, he states the following:

It is my opinion, to a reasonable degree of medical certainty, that the care provided to Paige Vearrier did not meet accepted standards of care in the following ways:

11

(a) . . .

(b) . . .

> All of Paige's healthcare providers, including Dr. Karl, Dr. Lunn, the CRNAs and other O.R. personnel, Nurse Kunkle, Nurse Neilsen, Dr. Madsen and Dr. Haun were responsible for monitoring Paige's condition while she was under their care.
>
> It is my opinion that the signs of hypoxia/ischemic brain injury would have been observable by careful monitoring. Paige was not brain damaged prior to 9 a.m. on 2/25/03.
>
> . . .
>
> It is my opinion that the failure to detect the presence of the hypoxia/ischemia before it caused Paige's irreversible brain damage was below accepted standards of care.
>
> It is more likely than not that the hypoxic/ischemic event was caused by hypovolemia or sepsis, which could have been detected by adequate preoperative, intraoperative and postoperative monitoring.

Docket 111-2, page 7-8. At his deposition, Dr. Goldie stated that he did not write the report contained in his affidavit, and that it was "a combination, of efforts where it was put into, let's say, legal parlance by Mr. Sundling's group." Docket 111-16, page 8.

Dr. Goldie's testimony at his deposition differs somewhat from his affidavit. Answering a question about violations of the standard of care, however, Goldie stated, "I'm not going to be the one to be able to identify those specific defects in levels of standard of care." Id. at 6. Specifically, Goldie stated that he would not offer any expert opinions regarding the specific standard of care for anesthesia, surgery, or intensive care

management.  Docket 90-2, page 4; see also id. at 13.  Goldie did communicate his belief that Paige "suffered permanent irreversible brain damage as a result of some defect that should have been corrected–because of some deviation of standards of care, but I'm not going to be the one to be able to identify those specific defects in levels of standard of care."  Id. at 4. Goldie concluded that "if this child had been more intensively monitored and managed, then it wouldn't have passed the point of no return."  Id. at 9. With regard to Lunn's examination of Paige in the PACU, Goldie stated that he "would hope" that a trained anesthesiologist would discover a hypoxic ischemic brain injury in the PACU.  Id. at 11.  Finally, Goldie agreed that the standard of care of several potential causes of Paige's brain injury is to "diagnos[e] and treat that condition as early as possible," stating that "her neurological condition–independent of what we want to label it–had the potential for reversal with a significantly less severe outcome, if there had been more intense monitoring."  Id. at 16.

**C. Dr. Martin**

Dr. Gilbert Martin is board certified in pediatrics and in neonatal-perinatal medicine.  He was deposed on October 30, 2008, and he testified that "the accepted standard of care . . . required a higher level of monitoring and a more proactive approach to therapy" considering Paige's status as a "high risk patient."  Docket 90-3, page 4.  With regard to specific criticisms related to Lunn's care, Martin testified that Lunn should have sent Paige to the PICU and should have better addressed Paige's increased temperature

13

during the procedure, but he admitted that he did not know what Lunn had done with regard to Paige's temperature. Id. at 6. Martin went on to agree that Lunn dealt appropriately with "what he was notified of." Id. Reading from his report, Martin stated that Paige should not have been transferred from the PACU at 2:45, a decision plaintiffs contend was made by Lunn. Docket 111-13, page 4. Finally, Martin testified that "the ball was dropped" when Paige was sent to the PACU instead of the PICU. Id. at 9.

### D. Existence of a Genuine Dispute of Material Fact Regarding Negligence of Lunn and AP

The court concludes that plaintiffs have met their burden of demonstrating that a genuine dispute of material fact exists with regard to Lunn's breach of the standard of care and causation. Martin can provide expert testimony that Lunn breached his standard of care by sending Paige to the PACU instead of the PICU after the surgery, and by transferring Paige out of the PACU to a private room at 2:45. To the extent that these decisions by Lunn led to poor monitoring and evaluation of Paige's condition immediately after her surgery, the testimony of both Martin and Goldie establishes a factual dispute as to "the harm resulted from some negligence for which defendant was responsible than in consequence of something for which he was not responsible." Lohr, 2 N.W.2d at 8. Consequently, summary judgment is denied to Lunn and AP.

### III. Dr. Stephen Karl and Pediatric Surgical Associates, P.C.

In their motion for summary judgment, Karl and PSA contend that plaintiffs have failed to provide expert testimony about the standard of care

applicable to Karl and about the issue of causation.  Docket 79, pages 5-6.  In response, plaintiffs contend that testimony by Goldie and Martin establishes a breach of the standard of care in the preoperative and intraoperative monitoring and care and establishes that these errors caused Paige's brain injury.  Docket 110, pages 19-23.

As stated above, plaintiffs provide expert testimony that poor monitoring and evaluation of Paige in the PACU fell below the standard of care, and that the lack of close observation of Paige was a cause of her brain injury.  Plaintiffs contend that both Karl and Lunn were responsible for the decision to transfer Paige to the PACU instead of to the PICU.  Docket 111-18, page 2 (citing Karl's deposition that while he does not remember who decided to send her to the PACU, that it is his customary practice to have a conversation with Dr. Lunn "about whether to send Paige to the PACU versus the PICU").  Therefore, for the same reasons stated above about Lunn, Karl and PSA also may be liable for the decision to transfer Paige to the PACU instead of the PICU, which resulted in poor monitoring and evaluation of Paige.  Accordingly, summary judgment is denied.

## CONCLUSION

For the reasons stated above, the court grants summary judgment to Sioux Valley Hospital and Health Systems.  The court denies summary judgment to Lunn, Anesthesia Physicians, Ltd., Karl, and Pediatric Surgical Associates, P.C.  Accordingly, it is hereby

ORDERED that the motion for summary judgment of defendants Karl and Pediatric Surgical Associates, P.C. (Docket 77) is denied.

IT IS FURTHER ORDERED that the motion for summary judgment of defendant Sioux Valley Hospitals and Health System (Docket 82) is granted.

IT IS FURTHER ORDERED that the motion for summary judgment of defendants Lunn and Anesthesia Physicians, Ltd. (Docket 87) is denied.

Dated August 14, 2009.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
CHIEF JUDGE